IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JOE WILLIS                                                                                  PLAINTIFF

V.                            NO. 2:06cv00186 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration[1]                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

      Plaintiff, Joe Willis, appeals from the Commissioner's final denial of his claim for a period of disability and disability insurance benefits (DIB). The standard of review is to determine whether the findings of fact are supported by substantial evidence in the record as a whole and whether the Commissioner's decision is free of legal error. 42 U.S.C. § 405(g); *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the Commissioner's decision must be affirmed. *Baldwin*, 349 F.3d at 555.

      Following an initial denial of the claim, an ALJ held a hearing February 22, 2006, and rendered his decision on June 22, 2006. Plaintiff was 47 years old at the time of the decision and met the insured status requirements of the Social Security Act through December 31, 2009, beyond the date of the decision. He had a high school education with

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

one year of vocational technical school.  His past relevant work experience was as a truck driver, equipment operator and farm worker.  He alleged disability due to a back problem; uncontrolled hypertension; gout; and toe, feet, head and back pain.  His alleged onset date was January 21, 2004.

The ALJ analyzed the claim by using the five step process required by the Social Security Regulations.[2]  At step one, he discussed the fact that Plaintiff had worked part-time following his alleged onset date of disability, but found he had not earned enough for the work to constitute substantial gainful employment.  At step two he found Plaintiff's uncontrolled hypertension, history of gout and low back pain to be severe.[3]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then considered all of Plaintiff's symptoms and the record to evaluate the credibility of Plaintiff's subjective complaints in connection with his assessment of residual functional capacity (RFC).  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration and limiting effects of those symptoms were not entirely credible.  The ALJ determined that Plaintiff had the RFC for medium work, but with the limitation that he must alternately sit and stand at will.  With the help of testimony from a Vocational Expert (VE), he decided that Plaintiff could not return

---

[2] *See* 20 C.F.R. § 404.1520.  *See also, Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

[3] To qualify as severe, an impairment must "significantly limit [a claimant's] physical or mental ability to do basic work activities," which are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921. The sequential evaluation process can be terminated at step two only where there is "no more than a minimal" impact on the ability to work.  *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

to his past relevant work.  At the hearing, the ALJ posed a hypothetical question to the VE asking him to assume a person with Plaintiff's age, education and past work experience who could do medium work with the limitation that "he would need to alternately sit and stand at will."  (Tr. 181-82.)   The VE had responded that the sit and stand option is infrequently a possibility in medium work, but getting down to the light and sedentary categories, there were a significant number of jobs, such as assemblers, in the Arkansas and national levels which Plaintiff could perform.  Of course, if a person can do medium work, he is considered capable of doing light or sedentary work.  20 C.F.R. § 404.1567(c). In reaching his conclusion at step five of the sequential analysis, the ALJ relied on the VE's response and found Plaintiff not disabled.

Plaintiff raises the sole argument that the ALJ's hypothetical question was flawed because it did not include all the impairments substantially supported by the record.  He says there were two problems with it.

First, he says that the ALJ looked only at a consultative examination report and ignored relevant medical records dated before the alleged onset date of January 21, 2004, and that he wrongly faulted Plaintiff for not seeking medical treatment after the onset date. He argues that if the ALJ was unsure of how Plaintiff's medical conditions impacted his ability to work, he had the obligation to supplement the record either by obtaining more information from the physicians or by a consultative examination.

Second, he argues that the hypothetical was flawed because it and the RFC assessment upon which it was based failed to specify the frequency of Plaintiff's need to alternate sitting and standing.

A hypothetical question must set forth all impairments supported by substantial record evidence and accepted as true, and should capture the "concrete consequences"

of those impairments. *Wilson v. Astrue,* 493 F.3d 965, 967 (8th Cir. 2007); *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007); *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). If the hypothetical question does not encompass all relevant impairments, VE testimony based on it does not constitute substantial evidence to support the ALJ's decision. *Lacroix*, 465 F.3d at 889. However, the hypothetical question need not include evidence not supported by the record. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993)(hypothetical may omit evidence not substantially supported by record as a whole); *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991)(hypothetical question need only include impairments accepted by ALJ as true). A hypothetical question posed to a vocational expert is sufficient if it sets forth the impairments supported by substantial evidence in the record and accepted as true by the ALJ. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).

Because social security hearings are non-adversarial, the ALJ bears a responsibility to develop the record fully and fairly, independent of the claimant's burden to press his case, and even where the claimant is represented by counsel. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). Nevertheless, reversal or remand due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Id.* at 838-39. Furthermore, while the ALJ has a duty to ensure that the record is fully and fairly developed, this does not absolve the claimant of his responsibility under the regulations to provide evidence establishing the severity of his alleged impairments or to be used in making an RFC finding. 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3), 416.912(c), 416.945(a)(3). The claimant is in the best position to provide information about his own medical condition. *Yuckert*, 482 U.S. at 146 n.5. Where the claimant is represented by an attorney, the ALJ "should ordinarily be entitled to rely on the claimant's counsel to

structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.*

### Elements of the Hypothetical and Failure to Develop the Record

To analyze Plaintiff's arguments, it will be helpful to look individually at the alleged impairments mentioned in Plaintiff's brief. Of the listed conditions, the one causing the most concern is Plaintiff's lower back problem.

The brief mentions that Plaintiff is disabled in part because of "morbid obesity." This apparently came from medical records appearing at Tr. 116-122. However, these records, which list a weight of 329 and refer to morbid obesity, are records for an individual named Jerry Wilson, not Plaintiff Joe Willis.[4] Plaintiff testified that his weight was 198.

The ALJ did find that Plaintiff's gout was severe within the meaning of the regulations, but there is little record of treatment. He was taking medication for the condition at the time of his hearing (Allopurinol) and it appears to be controlled. While some pain may result from the gout on a periodic basis, no doctor has said it is disabling or placed any restrictions on Plaintiff's activities because of it.

Plaintiff's heart condition does not play a part in the disability picture. The records show that he was admitted to Methodist Hospital of Jonesboro on November 18, 1996, with chest pain. An electrocardiogram had been done which suggested an old myocardial infarction, but it was never definitively established that he actually had an earlier heart attack. The doctors performed a catheterization, with normal results, and the doctors felt that his pain was non-cardiac. (Tr. 111-115.) There are no further records showing any subsequent heart problems.

---

[4] Only Tr. 119, a drug instruction sheet, pertains to Plaintiff.

Plaintiff's uncontrolled hypertension is more of a concern.  His readings have been consistently high.  He was taking two medications for this.  Again, however, no treating physician has stated that this would prevent him from work activities or placed restrictions on his activities, especially at the light or sedentary level of the jobs listed by the VE.

Finally, Plaintiff's lower back problems are definitely a factor which must be considered.  He was in a motor vehicle accident on September 15, 2001, when he was struck from the side by a driver running a red light.  He was initially diagnosed with a soft tissue injury, but continued to have problems and was seen several times for back pain.  Plaintiff's treating physician, Dr. James Jacobs, referred him for a Magnetic Resonance Imaging study (MRI) on July 20, 2002.  The findings were negative except at the L3-4 level, where a disc herniation was noted.  The specific findings were:

> Evaluation of the sagittal images reveals no evidence for compression fractures.  Reduction of intervertebral disc height is noted at the L3-4 level.  Evaluation of the axial images reveals no obvious bulges at the L2-3 level and the neuroforamina are patent.
>
> At the L3-4 level, there is evidence for a right paracentral disc herniation which causes spinal stenosis and narrowing of the right neuroforamen.
>
> At the L4-5 level, no disc bulges are noted and the neuroforamina appear patent.
>
> At the L5-S1 level, no disc bulges are noted and the neuroforamina appear patent.
>
> IMPRESSION: Right paracentral disc herniation at the L3-4 level causing spinal stenosis[5] and narrowing of the right neuroforamen.[6]

---

[5] Narrowing of the spinal canal.  It does not necessarily cause symptoms, but can cause pain or numbness in the back or legs, as well as cramping or weakness in the legs.  http://www.spine.org/articles/lumbarspinalstenosis.cfm

[6] Intervertebral foramen: An opening between vertebrae through which nerves leave the spine and extend to other parts of the body.  http://www.medterms.com.

(Tr. 141.)

Neither the MRI nor other associated records mention nerve impingement. A physical therapist had noted two days prior to the MRI that, although Plaintiff was complaining of pain and was tender to palpation of the lumbosacral paraspinals with increased muscle tightness, his lower extremity strength and deep tendon reflexes were normal. His straight leg raising on the left was limited to 65 degrees due to hamstring tightness. (Tr. 143.) On August 12, 2002, which is the final record from Dr. Jacobs, there is a notation that Plaintiff had a full range of motion of his back, with pain. He could touch the floor with both hands and there was the additional notation, "neuro intact." (Tr. 131.) There is no evidence in the record that Plaintiff sought medical care for his back condition after that date.

It is significant that the MRI and the last visit to Dr. Jacobs were approximately a year and a half before the alleged onset date. Plaintiff continued to work at employment characterized as medium or above.[7] In fact, he continued to work at farm work beyond his alleged onset date and to the time of the hearing. He testified that he worked three to four hours a day, but also testified that farm work was seasonal and at times he was working forty to sixty hours a week. (Tr. 178-79.) He said he was not doing any work at the time of the hearing, but it was because nothing was available. Plaintiff is not to be faulted for working. In fact, he is to be commended and the Court has sympathy for his circumstances. However the fact remains that his work activity demonstrates his condition

---

[7] The VE characterized the farm work as heavy level. (Tr. 182.)

is not such that it would prevent light or sedentary work, or medium work with a sit and stand option. It is also significant that despite the work, Plaintiff did not seek further medical treatment. While cost may have been a factor, there is no evidence in the record that Plaintiff sought low or no cost care.

The ALJ's findings are also supported by Plaintiff's level of daily activities. Those are set forth in Defendant's brief. Where subjective complaints are inconsistent with daily activities, that is a proper factor to take into account. *See Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (claim of severely disabling pain from fibromyalgia and other impairments was inconsistent with claimant's activities of daily living, including regular driving, shopping, housework, fishing, church attendance, caring for personal needs, and home-schooling her children); *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (proper to discount allegations of disabling pain due to lack of corroborating medical evidence, claimant's activity level and work record, and her failure to take prescription pain medication).

Finally, the consultative examination performed on July 7, 2004, by Dr. Sudhir Kumar is substantial evidence supporting the ALJ's findings on RFC and the elements of the hypothetical. It is true, as Plaintiff argues, that this was a one-time examination and that the doctor did not mention the MRI results. However, his examination tested various functional abilities and his findings were the result of his objective examination. The MRI would have little bearing on what Dr. Kumar observed. He found a full range of motion of the spine and extremities and the examination was negative for any muscle spasm. Reflexes were normal and there was no muscle weakness or atrophy. There were no sensory abnormalities. There was no deformity or swelling of the right knee. The doctor

observed normal gait and coordination. In fact, all observational findings were normal with the exception that Plaintiff declined to heel and toe walk because he claimed it hurt to do it. These examination results are substantial evidence.

In sum, the record was sufficiently complete and there was nothing to trigger a duty to supplement it. There was substantial evidence to support the ALJ's RFC determination and the elements of the hypothetical question he posed. Plaintiff has not established that the failure to further develop the record was prejudicial or unfair in this case.

### The Hypothetical and the Sit/Stand Option

Plaintiff argues that because the hypothetical did not specify the frequency of his need to alternate between sitting and standing, it was defective and does not provide a substantial basis for the decision. Defendant correctly points out that the ALJ clearly included in his hypothetical that Plaintiff would have to be allowed to sit or stand "at will." Thus, the VE clearly understood that the frequency would be at whatever level Plaintiff needed. Switching could be constant. This argument is without merit.

### Conclusion

The ALJ's decision in this case is supported by substantial evidence and is free of legal error. It is affirmed and the case will be dismissed with prejudice.

IT IS SO ORDERED, this 27th day of September, 2007.

_____
UNITED STATES MAGISTRATE JUDGE